1  Tracy Wei Costantino (SBN 192847)
   Suzetty C. Shen (SBN 287394)
2  JACKSON LEWIS P.C.
   725 South Figueroa Street, Suite 2500
3  Los Angeles, California 90017
   Telephone: (213) 689-0404
4  Facsimile: (213) 689-0430
   Tracy.Costantino@jacksonlewis.com
5  Suzetty.Shen@jacksonlewis.com

6  Attorneys for Defendant
   A+ STUDENT STAFFING
7

8
                UNITED STATES DISTRICT COURT
9
                NORTHERN DISTRICT OF CALIFORNIA
10

11

| | |
|---|---|
| BRUCE WILLIAMS and TONYA HENNESSEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ETC INSTITUTE, A+ STUDENT STAFFING, and, Does 1-50, Inclusive,<br><br>Defendants. | Case No.<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO CAFA (28 U.S.C. SECTIONS 1332(d) and 1441(a))**<br><br>[Filed concurrently with Certification of Interested Entities or Persons; Civil Case Cover Sheet; Declaration of Tracy Wei Costantino; and Declaration of Jade Edwards]<br><br>Complaint Filed: December 22, 2017<br>Removal Filed: February 15, 2018<br>Trial Date: None set. |

24      PLEASE TAKE NOTICE that Defendant A+ STUDENT STAFFING
25  ("Defendant A+") hereby invokes this Court's jurisdiction pursuant to 28 U.S.C.
26  sections 1332(d) (the Class Action Fairness Act ("CAFA")), 1441(a) and 1446(b),
27  and removes the above-entitled action to this Court from the Superior Court of the
28

State of California in and for the County of San Francisco under CAFA. In support thereof, Defendant A+ asserts the following:

**SERVICE AND PLEADINGS FILED IN STATE COURT**

1. On December 22, 2017, Plaintiffs BRUCE WILLIAMS and TONYA HENNESSEY ("Plaintiffs") filed a civil complaint against Defendants ETC Institute and A+ Student Staffing ("Defendants") in the Superior Court of the State of California in and for the County of San Francisco entitled <u>Bruce Williams and Tonya Hennessey v. ETC Institute and A+ Student Staffing</u>, Case No. CGC-17-563308, which sets forth the following nine causes of action: (1) failure to maintain and provide accurate wage statements to employees as required by California Labor Code section 226 and 1174; (2) failure to timely pay employees for all hours worked in violation of California Labor Code section 204b; (3) failure to pay regular and overtime wages as required by California Labor Code section 510, 558, and 1194; (4) failure to pay employees the additional hour of compensation for "split shift" work as required by section 4 of applicable Industrial Welfare Commission Orders, and Labor Code section 1198; (5) failure to provide meal and rest breaks or provide compensation for missed rest or meal breaks, as required by California Labor Code sections 226.7 and 512; (6) failure to reimburse Plaintiffs and those similarly situated for work-related expenses incurred in the discharge of their duties in violation of California Labor Code section 2802; (7) failure to allow employees to use accrued sick time, or timely pay sick time, in violation of California Labor code sections 246 and 246.5; (8) unlawful, unfair and fraudulent business practices pursuant to Business & Professions Code § 17200, *et seq.*; (9) violation of Labor Code Private Attorneys General Act of 2004, as set for in Labor Code section 1198 ("Complaint").

2. Defendant A+ is informed and believes that Plaintiffs served a copy of the Complaint on Defendant A+ on or about January 16, 2018. (Declaration of Jade Edwards ("Edwards Decl.") at ¶ 2.)

3. True and correct copies of the Summons, Complaint, Plaintiffs' Application for Approval of Complex Designation, and other related court documents received by Defendant A+ are attached as **Exhibit "A"** to the Declaration of Tracy Wei Costantino ("Costantino Decl."), filed concurrently herewith.

4. Plaintiffs' Complaint is brought as a class action pursuant to California Code of Civil Procedure § 382 on behalf of "all other data collectors, also called surveyors, who worked for Defendants in California for the four years preceding the filing of this complaint." (Complaint at ¶ 5). Plaintiffs request unlimited and unspecified amounts of relief in the Prayer for Relief on behalf of themselves and the putative class. (Complaint at 17:23-18:6.)

5. On or about February 9, 2018, Defendant ETC Institute filed an Answer to the Complaint in San Francisco Superior Court. A true and correct copy of Defendant ETC Institute's Answer is attached to the Costantino Declaration as **Exhibit "B"**.

6. On February 13, 2018, Defendant A+ filed an Answer to the Complaint in San Francisco Superior Court. A copy of the filed answer is attached as **Exhibit "C"** to the Costantino Declaration.

7. As of the date of this Notice of Removal, **Exhibits "A," "B,"** and **"C"** to the Costantino Declaration constitute all of the pleadings received by and filed by Defendant A+ in this matter. (Costantino Decl., ¶ 5.)

**SERVICE AND PLEADINGS FILED IN STATE COURT**

8. This Notice of Removal has been filed within thirty (30) days after Defendant A+ was deemed served a copy of Plaintiffs' Summons and Complaint upon which this action is based. This Notice of Removal is therefore filed within the time period provided by 28 U.S.C. § 1446(b). Murphy Bros., Ins. v. Michetti Pipe Stringing, Inc. 526 U.S. 344 (1999) (30-day removal deadline is triggered by actual service, as opposed to receipt of complaint through other means).

### NOTICE TO ALL PARTIES AND STATE COURT

9. In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be served promptly on Plaintiffs' counsel, Defendant ETC Institute's counsel, and filed with the Clerk of the San Francisco Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 have been satisfied.

### ETC INSTITUTE'S CONSENT TO REMOVAL

10. A removal is not proper unless "all defendants who have been properly joined and serviced . . . consent to the removal of the action." 28 U.S.C. 1446(b)(2)(A). Here, Defendant A+ has complied with this requirement by obtaining ETC Institute's consent to removal. (Costantino Decl., ¶ 6.)

### VENUE IS PROPER

11. The action was filed in San Francisco County Superior Court. Venue properly lies in the United States District Court for the Northern District of California pursuant to 28 U.S.C. sections 84(a), and 1441(a) and 1446. Venue of this action is also proper pursuant to 28 U.S.C. section 1391, providing that an action may be venued in a judicial district where a substantial part of the events or omissions giving rise to the claim occurred, and where, based on information and belief, Plaintiffs reside. See 28 U.S.C. § 1391(a).

### JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

12. On February 18, 2005, the Class Action Fairness Act of 2005 ("CAFA") was enacted. In relevant part, CAFA grants federal district courts original jurisdiction over civil class action lawsuits or similar state statutes filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant, and where the amount in controversy exceeds $5,000,000, exclusive of interest and costs. CAFA authorizes removal of such actions in accordance with 28 U.S.C. section 1446. As set forth below, this case

meets all of CAFA's requirements for removal, and is timely and properly removed by the filing of this Notice of Removal to Federal Court.

13. As set forth below, this is a civil action over which this Court has original jurisdiction under CAFA, 28 U.S.C. section 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. section 1441(a), in that it is an alleged representative action wherein: (1) the alleged "aggrieved parties" exceed 100 members; (2) Defendant A+ is not a State, State official, or other governmental entity; (3) Plaintiffs are citizens of a state different from Defendant A+; and (4) based on the allegations in the Complaint, the amount in controversy exceeds the sum of $5,000,000. 28 U.S.C. § 1441(a).

## REMOVAL BASED ON CLASS ACTION FAIRNESS ACT OF 2005 (28 U.S.C. SECTIONS 1332(a) AND (d))

**A.  The Putative Class Contains More Than 100 Members.**

14. From December 22, 2013 (four years prior to the filing of the Complaint) to December 22, 2017, Defendant A+ had approximately 694 non-exempt hourly employees who worked as data collectors or surveyors in the State of California who received at least one wage statement. (Edwards Decl. at ¶ 3.)

15. Although Defendant is presently unable to ascertain the exact number of putative class members who have separated their employment with Defendant A+, as further investigation is required, Defendant reasonably estimates that approximately 90% (approximately 624 employees) have separated, and 10% remained employed with Defendant A+. (Edwards Decl. at ¶ 4.)

16. Accordingly, the requirements for jurisdiction under the CAFA are satisfied because, during the putative class period (December 22, 2013 to the present), the alleged number of aggrieved employees amounts to at least 100 members as required by 28 U.S.C. section 1332(d)(5)(B).

**B.  Defendant A+ is Not a Government Entity.**

17.  Defendant A+ is not a State, a State official, or any other governmental entity. (Edwards Decl. at ¶ 5.)

**C.  At Least One Putative Class Member and Defendant A+ Are Citizens of Different States, So Minimal Diversity is Satisfied Under CAFA.**

18.  This action also meets the diversity requirement of CAFA. CAFA's diversity requirement is satisfied when at least one member of a class of plaintiffs is a citizen of a state in which none of the defendants are citizens, when at least one member of a class of plaintiffs is a citizen of a foreign state and one defendant is a U.S. citizen, or when at least one member of a class of plaintiffs is a U.S. citizen and one defendant is a citizen of a foreign state. 28 U.S.C. § 1332(d)(2). Citizenship of the parties in this action is determined by their citizenship status at the action's commencement. See Mann v. City of Tucson, 782 F.2d 790, 794 (9th Cir. 1986).

19.  The Complaint is silent as to the state wherein Plaintiffs Williams and Hennessey reside. However, Defendant A+ is informed and believes and thereon alleges that Plaintiffs are residents and citizens of the state of California based on the last known home address Defendant A+ has on file for each Plaintiff and the fact that Plaintiffs worked in California as data collectors for Defendant A+, all tending to show that Plaintiffs resided in California during the class period. (*See* Edwards Decl. at ¶ 6.)

20.  A corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c). Accordingly, Defendant A+, both at the time this action was commenced and the time it was removed to federal court, is a citizen of the State of Texas within the meaning of Section 1332(c)(1), because it was at all times a corporation formed under the laws of the State of Texas, with its principal place of business and corporate headquarters located at 4807 West Lovers Lane, Suite 205, Dallas, Texas

75209, where the Company's chief executive officer, president, and other senior executives direct, control, and coordinate the predominance of the Company's corporate and business activities. (Edwards Decl. at ¶ 7.)  See Hertz Corp. v. Friend, 130 S. Ct. 1181, 1186 (2010) ("We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities.  It is the place that Courts of Appeals have called the corporation's "nerve center."  And in practice it should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination.")

21. The presence of Doe defendants named by Plaintiffs has no bearing on the diversity with respect to removal.  See 28 U.S.C. § 1441(a) ("For purposes of removal under this Chapter, the citizenship of defendants used under a fictitious name shall be disregarded.")

**D.   The Amount in Controversy Exceeds $5 Million Based on the Allegations of the Complaint.**

22. This action also meets the amount in controversy requirement under CAFA. 28 U.S.C. Section 1332(d) authorizes the removal of class action cases in which, among other factors mentioned above, the amount in controversy for all class members exceeds $5,000,000.  Without admitting that Plaintiffs can recover any damages, Defendant A+ has a good faith belief that the amount in controversy in this action could exceed $5,000,000, exclusive of interest and costs.

23. The Complaint alleges that the total amount in controversy for the putative class does not exceed $4,999,999.99.  (Complaint at ¶ 3.)  However, Plaintiffs' bald assertion regarding the amount in controversy should be ignored. Standard Fire Insurance Company v. Knowles, 133 S.Ct. 1345, 1349 (2013) ("a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified").  As such, this Court must determine whether the amount in controversy requirement has been met by going beyond the

allegations in the complaint and "adding up the value of the claim of each person who falls within the definition of [the] proposed class." Id. at 1348.

24. In determining whether the amount in controversy exceeds $5,000,000, the Court must look to the "face of the complaint" and the prayer for relief for a specific amount of damages. See Guglielmino v. McKee Foods Corp., 506 F.3d 696, 701 (9th Cir. 2007) (courts look to prayer for relief, and any sums from the allegations which would be payable by defendant are included in determining an amount in controversy calculation); Saulic v. Symantec Corp., No. SA CV 07-610 AHS (PLAx), 2007 U.S. Dist. LEXIS 96640 at *6 (C.D. Cal. Dec. 26, 2007). The Court must presume the plaintiff will prevail on each and every one of his claims. Kenneth Rothschild Trust v. Morgan Stanley Dean Witter, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002), citing, Burns v. Windsor Ins. Co., 31 F.3d 1092, 1096 (11th Cir. 1994)(the amount in controversy analysis presumes that "plaintiff prevails on liability") and Angus v. Shiley Inc., 989 F.2d 142, 146 (3d Cir. 1993)("the amount in controversy is not measured by the low end of an open-ended claim, but rather by reasonable reading of the value of the rights being litigated"). In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." Korn v. Polo Ralph Lauren Corp., 536 F.Supp.2d 1199, 1205 (E.D. Cal. 2008). "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." Id. (emphasis in original).

25. Plaintiffs pray for monetary relief in each of their Nine Causes of Action. As discussed further below, Plaintiffs' allegations will exceed CAFA's $5 million amount-in-controversy jurisdictional minimum:

    a. First Cause of Action ("Violation of California Labor Code Section 226"): Plaintiffs allege that "Plaintiffs and the members of the proposed class are entitled to recover the damages and penalties set forth in the

**California Labor Code sections 226(e)(1) and 226.3**." (Complaint at ¶ 27)(emphasis added).

b. Second Cause of Action ("Failure to Pay Wages When Due Pursuant to California Labor Code § 204b"): Plaintiffs allege that "Defendants routinely offered nondiscretionary bonuses to Plaintiffs and members of the class, which Defendant also referred to as 'incentives'. . . . Sometimes Plaintiffs did not receive gift cards for their earned incentives. Defendants also did not properly include these bonuses when calculating the regular rate of pay or pay for all hours worked. As such, Defendants failed to timely pay the wages due in violation of **California Labor Code 204b**." (Complaint at ¶¶ 31-32)(emphasis added).

c. Third Cause of Action ("Failure to Pay Overtime Wages Pursuant to California Labor Code §§ 510, 558, And 1194"): Plaintiffs allege that "Defendants routinely offered nondiscretionary bonuses to Plaintiffs and members of the class, which Defendant also referred to as 'incentives'. . . . Defendants failed to include these **nondiscretionary bonuses in calculating the 'regular rate' of pay of each employee for overtime purposes**. . . . **Defendant also failed to pay for all hours worked, as supervisors routinely inaccurately reported hours worked**. As a result of Defendants' failure to compensate Plaintiffs, and the members of the proposed class, for all time worked, Defendants failed to provide Plaintiffs and the members of the proposed class with **accurate wage statements as required by California Labor Code section 226**." (Complaint at ¶¶ 37-38)(emphases added).

d. Fourth Cause of Action ("Violation of Labor Code Section 1198"): Plaintiffs allege that "Defendants engaged in the routine practice of scheduling work schedules for Plaintiffs and other proposed class

members that included breaks in-between shifts that were longer than any applicable rest or meal period.  However, Defendants never paid Plaintiffs or proposed class members the **premium pay required** by the Wage Orders, in violation of **Labor Code Section 1198**. . . . Defendants further failed to list split-shifts worked on Plaintiffs' or the other proposed members of the class' wage statements, in violation of **Labor Code section 226(a).**  Defendants also failed to maintain records, including but not limited to records of split shifts worked, pursuant to **Labor Code section 226(b)**. . . . Plaintiffs and the members of the proposed class are therefore entitled to one hour pay at the applicable minimum wage for every split shift worked, and any other relief appropriate." (Complaint at ¶¶ 45-46)(emphases added).

e. <u>Fifth Cause of Action ("Failure to Provide Rest and Meal Breaks as Required by Labor Code Sections 226.7 And 512 And Applicable Wage Orders")</u>:  Plaintiffs allege that "Defendants [] never paid Plaintiffs or other members of the proposed class an additional hour of compensation if Plaintiffs or the members of the proposed class did not receive the required rest and meal breaks. . . . As a result of Defendants' failures, Plaintiffs and the members of the Class are entitled to recover the **additional hour of compensation as set forth in California Labor Code sections 226.7**.  Because Defendants did not pay the additional hour of compensation for missed rest or meal breaks, the wages [sic] statements of the proposed class members, and Plaintiffs, did not accurately list all wages earned in violation **of Labor Code section 226**." (Complaint at ¶¶ 50-51)(emphases added).

f. <u>Sixth Cause of Action ("Failure to Reimburse For Work Related Expenses In Violation of Labor Code § 2802")</u>:  Plaintiffs allege that "Defendants required Plaintiffs and the proposed class members to incur

Williams v. ETC Institute, *et al.*
Case No.:                                    10                          **NOTICE OF REMOVAL**

work-related expenses during their employment, including the costs associated with personal internet service, cell phone service, and cellular data usage. Defendants **failed to reimburse Plaintiffs and the class members for said expenses as required by Labor Code section 2802**." (Complaint at ¶ 54)(emphasis added).

g. Seventh Cause of Action ('Failure to Allow Employees to Use Accrued Sick Time, or Timely Pay Sick Time, In Violation of Labor Code §§ 246 and 246.5"): Plaintiffs allege that "Plaintiffs and the members of the proposed class are [] entitled to the **amounts due and unpaid**, for the sick time they requested but were denied, **multiplied by three**, plus interest, according to **Labor Code section 248.5**, as well as all other remedies that may be appropriate." (Complaint at ¶ 60)(emphases added).

h. Eighth Cause of Action ("Unlawful, Unfair And Fraudulent Business Practices Pursuant to Business & Professions Code § 17200, *et seq.*"): Plaintiffs allege that "The policies, acts and practices heretofore described were and are unlawful business acts or practices . . . [and] violates applicable Labor Code sections, including but not limited to **Labor Code sections 203, 204, 204b, 226, 226.7, 246, 246.5, 510, 512, 558, 1174, 1194, 1198, and 2802**, applicable Industrial Welfare Commission Wage Orders, and other provisions of California common and/or statutory law." (Complaint at ¶ 64)(emphasis added).

i. Ninth Cause of Action ("Labor Code Private Attorneys General Act of 2004: Labor Code Sec. 2698"): Plaintiffs allege that "[t]he unlawful policies, acts, and practices . . . give rise to statutory penalties as result of such conduct, including but not limited to penalties as provided by **Labor Code sections 203, 204, 204b, 226, 226.7, 246, 246.5, 510, 512,**

**558, 1174, 1194, 2802, and 2699.5** and applicable Industrial Welfare Commission Wage Orders." (Complaint at ¶ 69)(emphasis added).

j. Plaintiffs' Complaint additionally requests:

  i. Penalties under **Labor Code section 1174.5** for failure to maintain records. (Complaint at ¶ 1);

  ii. Penalties under **Labor Code section 210** for violation of Labor Code section 204b. (Complaint at ¶ 1);

  iii. Prayer for **liquidated damages** under Labor Code section 1194.2. (Complaint at ¶ 1);

  iv. "**Treble damages** if Defendant fails to pay the determined amount pursuant to Labor Code section 206." (Complaint at Prayer for Relief 18:3-4)(emphasis added);

  v. "**Reasonable attorneys' fees** pursuant to Labor Code sections 226, 1194, 2802, and 2699." (Complaint at Prayer for Relief 18:1-2)(emphasis added); and

  vi. "**Pre- and post-judgment interest**." (Complaint at Prayer for Relief 18:6)(emphasis added).

26. The following figures are used to calculate the amount in controversy:

  a. <u>Number of Employees</u>:  From December 22, 2013 (four years prior to the filing of the Complaint) through the date of removal, Defendant A+ had approximately **694** nonexempt hourly workers who worked as data collectors or surveyors in the State of California who received at least one wage statement. (Edwards Decl. at ¶ 3.)

  b. <u>Number of Separated Employees</u>:  Although Defendant is presently unable to ascertain the exact number of putative class members who have separated their employment with Defendant A+, as further investigation is required, Defendant reasonably estimates that

1  approximately **90%** (or about 624 employees) have separated, and 10%
2  remain employed with Defendant A+.  (Edwards Decl. at ¶ 4.)

   c. <u>Hourly Rate of the Employees in the Putative Class</u>:  Employees in the putative class were paid between $9.00 per hour to $25.00 per hour. (Edwards Decl. at ¶ 8.)  The average for the 694 non-exempt employees who worked as data collectors or surveyors during a four year putative class period is approximately **$14.75 per hour**.  (*Id.*)

   d. <u>Frequency of Pay</u>:  Employees were paid on a **weekly basis** during that putative class period.  (Edwards Decl. at ¶ 9.)

   e. <u>Number of Pay Periods/Workweeks</u>:  There were approximately **4,170 pay statements** issued during the four-year putative class period of December 22, 2013 to the filing of the complaint on December 22, 2017.  (Edwards Decl. at ¶ 10.)  For purposes of calculating the amount in controversy under Plaintiffs' first cause of action for inaccurate wage statement penalties (Labor Code section 226), the liability period is one year preceding the filing of the complaint.  Between December 22, 2016, to December 22, 2017, there were approximately **1,710 workweeks and 330 employees** who worked during the time frame. (Edwards Decl. at ¶ 11.)  Defendant uses these "workweek" numbers to conservatively calculate the amount in controversy, although the size of the class will continue to expand to present day, as will the amount in controversy.

27.  Defendant A+ calculates the amount in controversy for each of Plaintiffs' nine causes of action and Prayer for Relief as follows:

|  | DEFINITION | ASSUMPTIONS | DAMAGES | |
|---|---|---|---|---|
| **L.C. § 226 – Inaccurate Wage Statement Penalties (1st Cause of Action)** | $50 per employee for initial pay period violation, plus $100 per employee for each subsequent violation per pay | Assume weekly pay violations. Relevant time frame is the 1-year liability preceding the filing of the operative complaint (December 22, | [$100 *1,710 workweeks for 1 year liability period] – | $154,500.00 |

| | | | | |
|---|---|---|---|---|
| | period. Maximum aggregate penalty of $4,000. | 2016 – December 22, 2017). There were approximately 330 employees who worked during this time frame, and 1710 workweeks. | [$50 * 330 employees] (offset initial violation penalty) = | |
| L.C. § 226.3 – Inaccurate Wage Statement Penalties (1st Cause of Action) | $250 per employee per violation in an initial citation, plus $1,000 per employee for each subsequent citation | Assume only $250 penalty per employee per weekly pay period (reduction from the rate of $1,000 for each subsequent violation) | $250 * 4,170 workweeks = | $1,042,500.00 |
| L.C. § 1174.5 – Failure to Maintain Records (Complaint at ¶ 1.) | $500 per employee | Assume $500 per employee | $500 * 694 employees= | $347,000.00 |
| L.C. § 204b - Unpaid Bonuses/Wages (2nd Cause of Action) | Unpaid non-discretionary bonuses per class member | Assume $200 per class member | $200 unpaid bonus * 694 employees = | $138,800.00 |
| L.C. § 210 – Penalties for Violation of L.C. § 204b (Complaint at ¶ 1) | $100 per employee for an initial violation, plus $200 per employee for each subsequent citation, plus 25% of the amount unlawfully withheld | Assume $100 per employee for initial violation only | $100 * 694 employees = | $69,400.00 |
| L.C. § 2510, 558, 1194 - Overtime Violation for Failure to Include Bonuses in Regular Rate Regular Rate (3rd Cause of Action) | Overtime regular rate shortfall per employee per week | $1.00 per employee per week | $1.00 * 4,170 pay periods = | $4,170.00 |
| L.C. § 2510, 558, 1194 - Off-the Clock Overtime Wages (3rd Cause of Action) | Unpaid off-the-clock hours per week per employee | 1.5 hour off the clock OT/week | $14.75/hr (average hourly rate of putative class) * 1.5 * 1.5/wk * 4,170 workweeks= | $138,391.88 |
| L.C. § 1198 – Split Shift Premium Violations | Number of split shift premiums per employee per week | 3 split shifts premiums per employee per week | 3 split shifts x 4,170 workweeks x $9.77/hr | $122,222.70 |

| | | | | |
|---|---|---|---|---|
| (4th Cause of Action) | | | (average California state minimum wage during 4-year liability period) = | |
| **L.C. § 226.7 – Meal Period Violations** (5th Cause of Action) | Meal period premiums for each violation per week | 3 violations/week | $14.75/hr * 3/wk * 4,170 workweeks = | $184,522.50 |
| **L.C. § 226.7 – Rest Period Violations** (5th Cause of Action) | Rest period premiums for each violation per week | 3 violations/week | $14.75/hr * 3/wk * 4,170 workweeks = | $184,522.50 |
| **L.C. § 2802 – Unpaid Reimbursements** (6th Cause of Action) | Amount of reimbursement owed per employee per week | $15 per employee per week | $15/wk * 4,170 workweeks = | $62,550.00 |
| **L.C. § 248.5 – Sick Pay Violations** (7TH Cause of Action) | Hours of unpaid sick pay per employee per week multiplied by three, but not to exceed an aggregate penalty of $4,000 | 0.5 hours unpaid per employee per week (and conservatively omitting the interest that Plaintiffs request) | $14.75/hr * 0.5 hours * 3 * 4,170 workweeks = | $92,261.25 |
| **L.C. § 203 – Waiting Time Penalties** (8th & 9th Causes of Action) | 30 days of pay for terminated persons | Estimated that terminated persons are 90% of the putative class, or 624 members. Assume that each employee worked 7 hours per day. | $14.75/hr * 8 hrs/day * 30 days * 624 employees = | $2,208,960.00 |
| **L.C. § 1194.2 – Liquidated Damages** (Complaint at ¶ 1) | Liquidated damages "in an amount equal to the wages unlawfully unpaid and interest thereon," but not for the recovery of overtime compensation (L.C. § 1194.2(a)) | Liquidated damages for off-the-clock pay (at straight-time and not overtime), unpaid bonuses, split shift premiums, meal break premiums, and rest break premiums | $92,261.25 (off-the-clock pay at straight time= $14.75/hr * 1.5 hrs/wk * 4,170 workweeks) + $138,800.00 (unpaid bonuses) + $122,222.70 (split shift premiums) + $184,522.50 (meal break premiums) + $184,522.50 | $722,328.95 |

| | | | | |
|---|---|---|---|---|
| **L.C. § 206 – Treble Damages** (Complaint at Prayer, 14:3-4) | Treble damages for willfully failing pay wages | 3 times prayer for unpaid wages (off-the-clock pay (at straight-time and not overtime), unpaid bonuses, split shift premiums, meal break premiums, and rest break premiums) | (rest break premiums = 3 x $691,575.20 = | $2,166,986.85 |
| | | **TOTAL POTENTIAL DAMAGES** | | **$7,639,116.63** |

28. Based on the foregoing, the total potential recovery for the putative class exceeds CAFA's jurisdictional minimum. Notably, the amount in controversy set forth above <u>does not assume 100% violation</u> (despite Plaintiffs' allegation that Defendant A+ maintained and administered illegal, uniform corporate policies throughout the class period), and is based on workweeks that are calculated through the filing of the complaint on <u>December 22, 2017 only</u>. Since the liability period continues to present day, the size of the <u>class will continue to expand over time, as will the amount in controversy</u>. Therefore, the amount in controversy on Plaintiffs' claims is actually greater than the conservative estimate set forth for purposes of this Notice of Removal.

29. Further, Plaintiffs also seek attorneys' fees, which the Court should consider and include in the amount in controversy because the California Labor Code allows such recovery. (Complaint at Prayer For Relief, 14:3-4); see Labor Code § 218.5 (awarding attorneys' fees to the prevailing party in any suit for the nonpayment of wages); <u>Galt G/S v. JSS Scandinavia</u>, 142 F.3d 1150, 1156 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). Attorneys' fees awards in California wage-hour class actions can total several hundred thousand dollars. See, e.g., <u>McGuigan v. City of San Diego</u>, 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in

settlement of $1.6 million); Pellegrino v. Robert Half Int'l, Inc., 182 Cal. App. 4th 278, 287, 296 (2010) (affirming $558,926.85 in attorneys' fees in exemption misclassification class case, but reversing as to multiplier); Vasquez v. California, 45 Cal. 4th 243, 249 (2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties and waiting time penalties); Amaral v. Cintas Corp. No. 2, 163 Cal. App. 4th 1157, 1216-18 (2008) (affirming award of $727,000 in attorneys' fees plus a multiplier that equated to total fees of $1,199,550 in class action involving violations of a living wage ordinance, the California Labor Code as well as unfair competition and contract claims); Jasso v. Money Mart Express, Inc., 2012 U.S. Dist. LEXIS 27215 at *20 (N.D. Cal. Mar. 1, 2012) ("it is well established that the Ninth Circuit has established 25% of the common fund as a benchmark award for attorney fees"). The Court should therefore consider attorneys' fees of at least **$1,848,714.16** – a conservative estimate at **25%** of the total potential amount in controversy.

30. Based on the foregoing and without conceding or admitting to the underlying merit of Plaintiffs' claims, it is apparent that the amount in controversy including potential fees is at least $5 million.

31. Accordingly, although Defendant A+ denies Plaintiffs' claims, based on the foregoing, Plaintiffs' claims exceed the $5 million jurisdictional minimum of this Court under 28 U.S.C. § 1332(d).

## CONCLUSION

32. Defendant A+ Student Staffing hereby removes the action based on CAFA requirements, and requests that this Court retain jurisdiction for all further proceedings.

Dated: February 15, 2018

JACKSON LEWIS P.C.

By: */s/ Tracy Wei Costantino*
Tracy Wei Costantino
Suzetty C. Shen
Attorneys for Defendant
A+ STUDENT STAFFING

4821-7573-7181, v. 2

Williams v. ETC Institute, et al.
Case No.:                            17                    **NOTICE OF REMOVAL**