UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE WILLIAMS, ET AL., <br> Plaintiffs, <br> v. <br> ETC INSTITUTE, et al., <br> Defendants. | Case No. 18-cv-01011-MEJ <br><br> **ORDER RE: MOTION TO REMAND** <br> Re: Dkt. No. 13 |

## INTRODUCTION

Plaintiffs Bruce Williams and Tonya Hennessey (together, "Plaintiffs") move to remand this putative class action to San Francisco Superior Court. Mot., Dkt. No. 13. Defendant A+ Student Staffing Inc. filed an Opposition (Dkt. No. 18), in which Defendant ETC Institute joins (Dkt. No. 22). Plaintiffs filed a Reply. Dkt. No. 21. The Court previously vacated the hearing on the matter and ordered the parties to provide supplemental briefing. Suppl. Br. Order, Dkt. No. 23; *see* A+ Suppl. Br., Dkt. No. 29; Pls.' Suppl. Br., Dkt. No. 30. Having considered the parties' papers, the relevant legal authority, and the record in this case, the Court **GRANTS** the Motion.

## BACKGROUND

**A.  Factual Background**

Plaintiffs worked for Defendants as data collectors, also referred to as surveyors. Compl. ¶ 5, Dkt. No. 1-2. While A+ Student recruited Plaintiffs, ETC Institute controlled their employment. *Id.* ¶ 6. Job assignments and work communications come from, and surveyors submit their time sheets to, ETC Institute managers. *Id.* However, A+ Student's name appears on wage statements. *Id.*

Surveyors do not report to an office but receive assignments by meeting at central

locations or via text message or email on personal cell phone. *Id.* ¶¶ 5, 12. Surveyors use their personal cell phones at work to respond to calls from managers regarding job assignments or job changes, as well as text messages regarding scheduling and other issues. *Id.* ¶ 12; *see id.* ¶ 5. Defendants also require surveyors to clock in and out for every shift by texting their supervisors. *Id.* ¶¶ 8, 12. Defendants did not provide any other method of submitting hours worked. *Id.* ¶ 12. As such, surveyors could not perform their jobs without cell and data service on a mobile device. *Id.* Defendants did not reimburse surveyors for costs associated with using their personal cell phones for work. *Id.*

In addition, Defendants expected surveyors to access Wi-Fi to complete and submit individual surveys on ETC's tablets and to perform other tasks online, such as uploading their survey routes worked, job descriptions, and times of each survey. *Id.* Defendants did not reimburse surveyors for these costs. *Id.*

ETC Institute told surveyors that if they received a certain number of surveys, they would receive "incentive pay" – that is, additional compensation – in the form of Visa gift cards. *Id.* ¶ 7. ETC Institute did not, however, provide these Visa gift cards. *Id.* ETC Institute thus did not provide Plaintiffs and other surveyors with all promised remuneration, and all such remuneration is not set forth in their wage statements. *Id.* As a result, surveyors' wage statements do not accurately reflect the regular rate of pay because they do not include the promised incentives. *Id.* This in turn means wage statements do not accurately reflect the overtime rate of pay, which is based on the regular rate of pay, and causes Defendants to inaccurately calculate overtime. *Id.*

Defendants instructed surveyors to report hours worked via text. *Id.* ¶ 8. Supervisors then submitted time worked for surveyors. *Id.* Surveyors routinely worked in excess of eight hours a day or forty hours a week and were therefore entitled to overtime compensation. *Id.* However, supervisors did not accurately report this time. *Id.* As a result, surveyors' wage statements do not reflect all hours worked, and surveyors are not paid for hours that should have been paid at the overtime rate of pay. *Id.*

Although surveyors were required to work split shifts, Defendants did not pay them the additional hour of compensation as required by Section 4 of the applicable Wage Order. *Id.* ¶ 9.

1 Defendants also did not keep records reflecting split shifts worked. *Id.*

Plaintiffs worked more than six-hour shifts; however, Defendants did not provide Plaintiffs or other surveyors with rest and meal breaks. *Id.* ¶ 10. Defendants also did not provide surveyors with additional compensation when they did not receive such breaks, particularly when they worked on weekends. *Id.* Defendants took no action to provide meal or rest breaks and in fact stated there was no time for such breaks. *Id.* As a result, surveyors worked without breaks for their entire shifts. *Id.*

Defendants either did not permit surveyors to use accrued sick days or instructed surveyors to stay home if sick. *Id.* ¶ 11. In the latter case, Defendants did not use accrued sick leave to compensate surveyors for the sick days. *Id.*

**B.      Procedural Background**

On December 22, 2017, Plaintiffs initiated this lawsuit in San Francisco Superior Court. *See* Compl. Plaintiffs assert the following causes of action: (1) violation of California Labor Code section 226; (2) failure to pay wages pursuant to California Labor Code section 204b; (3) failure to pay overtime wages pursuant to California Labor Code sections 510, 558, and 1197; (4) violation of California Labor Code section 1198; (5) failure to provide meal and rest breaks pursuant to Labor Code sections 226.7and 512 and applicable Wage Orders; (6) failure to reimburse for work-related expenses in violation of California Labor Code section 2802; (7) failure to allow employees to use accrued sick time or to timely pay sick time in violation of California Labor Code sections 246 and 246.5; and (8) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200. Compl. ¶¶ 19-67. Plaintiffs also seek penalties under the Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2698. Compl. ¶¶ 68-70.

Plaintiffs seek to represent a putative class of "similarly situated individuals who worked for Defendants as surveyors or data collectors in the State of California within four years of the date of filing this complaint." *Id.* ¶ 13. They allege, on information and belief, that their damages, back-wages, restitution, penalties, interest, and attorneys' fees do not exceed an aggregate of $4,999,999.99 and that Plaintiffs' individual claims do not exceed $74,999.99. *Id.* ¶ 3. Plaintiffs request compensatory and statutory damages, penalties, and restitution "in an amount to be proven

3

at trial." *Id.*, Prayer for Relief ¶ 2. Plaintiffs seek attorneys' fees pursuant to California Labor Code sections 226, 1194, 2802, and 2699, as well as treble damages if an unspecified "Defendant fails to pay the determined amount pursuant to Labor Code section 206." *Id.*, Prayer for Relief ¶¶ 3-4.

Plaintiffs served A+ Student with a copy of the summons and Complaint on January 16, 2018. Not. of Removal ¶ 2, Dkt. No. 1; Edwards Removal Decl. ¶ 2, Dkt. No. 1-5. On February 15, 2018, A+ Student removed the action to federal court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), and 28 U.S.C. §§ 1441(a) and 1446(b). *See* Not. of Removal. ETC Institute consented to the removal. *Id.* ¶ 10; Costantino Decl. ¶ 6, Dkt. No. 1-1. The Notice of Removal alleges that from December 22, 2013 to December 22, 2017, A+ Student had approximately 694 non-exempt hourly employees who worked as data collectors or surveyors in California who received at least one wage statement. *Id.* ¶ 14; Edwards Removal Decl. ¶ 3. The Notice of Removal further alleges the amount in controversy exceeds $5 million. *Id.* ¶¶ 22-31; *see also* Edwards Removal Decl. ¶¶ 4, 8-11. A+ Student calculates the total potential damages to be $7,639,116.93 and estimates attorneys' fees to be at least 25% of that figure, or $1,848,716.16. Not. of Removal ¶¶ 27, 29.

Although the Complaint does not allege where Plaintiffs reside, A+ Student "is informed and believes . . . Plaintiffs are residents and citizens of the state of California based on the last known home address Defendant A+ has on file for each and the fact that Plaintiffs worked in California as data collectors for Defendant A+[.]" *Id.* ¶ 19; Edwards Removal Decl. ¶ 6. A+ Student is incorporated and has its principal place of business in Texas. Not. of Removal ¶ 20; Edwards Removal Decl. ¶ 7.

**LEGAL STANDARD**

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United

4

States for the district and division embracing the place where such action is pending." CAFA allows for subject matter jurisdiction over class actions in which (1) the proposed class includes at least 100 members, (2) any member of a plaintiff class is of diverse citizenship from any defendant, and (3) the amount in controversy exceeds $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d).

Generally, "'[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.'" *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773 (9th Cir. 2017) (quoting *Kokkonen*, 511 U.S. at 377). But "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). Thus, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* (citing 28 U.S.C. § 1446(a)). But if, after removal, the plaintiff contests the defendant's allegations regarding the amount in controversy, both parties submit proof and the court must decide by a preponderance of the evidence that the amount in controversy requirement is met. *Id.* at 553-54 (citing 28 U.S.C. § 1446(c)(2)(B)).

To determine the amount in controversy, courts first look to the complaint. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). "Generally, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Id.* (internal quotation marks omitted). If no damages are stated, or the defendant believes the claimed damages are understated, the defendant seeking removal bears the burden of showing "the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Id.* The parties may submit affidavits, declarations, or "other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Id.* (internal quotation marks omitted). But "when the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and its underlying assumptions must be reasonable ones." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015).

Remand is unwarranted if, after reviewing the pleadings and evidence, a court finds it is

5

more likely than not the plaintiff put over $5 million in controversy. *See Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 689 (9th Cir. 2006). But where the pleadings and evidence do not establish the threshold jurisdictional amount by a preponderance of the evidence, the case must be remanded to state court. *Id.*

**DISCUSSION**

Plaintiffs move for remand on the grounds that A+ Student fails to establish that (1) the amount in controversy exceeds $5 million, and (2) there are more than 100 class members.

**A.    Burden of Establishing Federal Jurisdiction**

Now that plaintiff contests the jurisdictional threshold, A+ Student must establish, by a preponderance of the evidence, the amount in controversy is satisfied. *Dart Cherokee*, 135 S. Ct. at 554; *see Ibarra*, 775 F.3d at 1197.

Even though A+ Student bears the burden of establishing the amount in controversy, *see Ibarra*, 775 F.3d at 1199, Plaintiffs' argument that they need not submit "alternative calculations" ignores the fact that they may still submit their own evidence.[1] "[W]hen the defendant's assertion of the amount in controversy is challenged by plaintiffs in a motion to remand, the Supreme Court has said that *both sides* submit proof and the court then decides where the preponderance lies." *Ibarra*, 775 F.3d at 1198 (citing *Dart Cherokee*, 135 S. Ct. at 554-55) (emphasis added); *see also id.* at 1199 ("[W]e remand with instructions to the district court to consider the parties' briefs on this issue and set a reasonable procedure in the first instance so that each side has a fair opportunity to submit proof" as to the amount in controversy.). In other words, Plaintiffs are afforded the opportunity to submit evidence in support of their contention that the amount in

---

[1] Plaintiff's reliance on *Brown v. Chipotle Mexican Grill, Inc.*, 2016 WL 3402619 (N.D. Cal. June 21, 2016), is misplaced. Reply at 8. Unlike the case at hand, *Brown* did not concern a class action. CAFA was therefore not implicated, and the general presumption against removal applied. *Cf. Bridewell-Sledge v. Blue Cross of Cal.*, 798 F.3d 923, 929 (9th Cir. 2015) (finding "district court erred in its remand orders by applying a strong presumption against removal jurisdiction" in CAFA case (internal quotation marks omitted)); *see Allen v. Boeing Co.*, 784 F.3d 625, 633 (9th Cir. 2015) ("In *Dart*, the Supreme Court noted that there was no presumption against removal jurisdiction and that CAFA should be read 'with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" (quoting *Dart Cherokee*, 135 S. Ct. at 554)).

6

controversy is below the CAFA threshold. They have not elected to do so.

**B.      Edwards Opposition Declaration**

Before turning to A+ Student's amount in controversy calculations, the Court considers Plaintiffs' argument that the Edwards Opposition Declaration does not constitute competent evidence to support A+ Student's contention that the amount in controversy exceeds $5 million. *See* Reply at 11-15.

Plaintiffs contend Jade Edwards, A+ Student's Vice President and General Manager, does not include with his Declaration the records which he reviewed, does not describe his search of TempWizard or TempWizard's features that enable such a search, and does not identify the documents from which he gathered this information. *Id.* at 11. Plaintiffs assert, without citation, that "[u]nspecified software searches for unidentified documents are not competent evidence." Reply at 12. This argument lacks merit. Mr. Edwards declares

> I have personal knowledge and am familiar with the facts set forth in this declaration because I was able to access the information directly myself through the [A+ Student]'s internal records retained on TempWizard, including information related to employee workweeks, wage statements issued to employees, the residences of the employees, the rate of pay of employees, and the employment or termination status of the employees.

Edwards Opp'n Decl. ¶ 4, Dkt. No. 18-1. Mr. Edwards further explains he personally used TempWizard to search, retrieve, and review electronic timesheets and payroll histories; from those searches, he determined the total number of data collectors or surveyors in California, the number of employees who have separated from A+ Student, the hourly wages of those employees, and the number of paychecks that were issued during the relevant period. *Id.* ¶¶ 5-12.

This lays a sufficient foundation for the evidence he introduces. Mr. Edwards personally searched for and reviewed A+ Student employees' timesheets and payroll histories, and he describes the documents he examined. He therefore has personal knowledge of and can testify about the facts set forth in his Opposition Declaration. *See Ibarra*, 775 F.3d at 1197 ("The parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." (internal quotation marks omitted)); *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir.

7

2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); Fed. R. Civ. P. 56(c)(4). Plaintiffs cite no authority for the proposition that Mr. Edwards must provide the underlying records he examined at this early stage of the litigation.

### C. Number of Potential Class Members

A+ Student offers evidence that between December 22, 2013 and December 22, 2017, it employed and paid approximately 694 non-exempt employees as data collectors or surveyors in California. Edwards Removal Decl. ¶ 3; Edwards Opp'n Decl. ¶ 5. Mr. Edwards explains that he calculated this figure by personally reviewing TempWizard records. Edwards Opp'n Decl. ¶ 5. Plaintiffs argue this figure is "arbitrary" but do not explain why that is; nor do they offer evidence challenging the figure. Mot. at 23. Indeed, Plaintiffs abandon this argument in Reply and do not address the Edwards Opposition Declaration.

At this point, the Court finds A+ Student has established, by a preponderance of the evidence, that there are more than 100 potential class members.

### D. Amount in Controversy

"The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010); *see Ibarra*, 775 F.3d at 1198 ("CAFA's requirements are to be tested by consideration of real evidence and the *reality of what is at stake in the litigation*, using reasonable assumptions underlying the defendant's theory of damages exposure." (emphasis added)). CAFA "tells the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [the] proposed class and determine whether the resulting sum exceeds $5 million. If so, there is jurisdiction and the court may proceed with the case." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013).

A+ Student calculates the amount in controversy to be $7,215,276.63, exclusive of attorneys' fees. Jt. Chart at 18. A+ Student's calculations rely on the following. Mr. Edwards declares that between December 22, 2013 and December 22, 2017, A+ Student employed

8

approximately 694 non-exempt employees as data collectors or surveyors in California who received at least one wage statement. Edwards Removal Decl. ¶ 3; Edwards Opp'n Decl. ¶ 5. Of these 694 employees, 678 have not worked for A+ Student for 30 or more days; only 16 remain employed by A+ Student. Edwards Opp'n Decl. ¶ 6. Surveyors were paid on a weekly basis and received wages between $9 and $25 per hour, with an average hourly wage of $14.75. *Id.* ¶¶ 8-9; Edwards Removal Decl. ¶¶ 8-9. A+ Student also issued approximately 4,170 pay statements between December 22, 2013 and December 22, 2017. Edwards Removal Decl. ¶ 10; Edwards Opp'n Decl. ¶ 10. Between December 22, 2016 and December 22, 2017, A+ Student employed 330 surveyors and issued 1,710 paychecks and corresponding wage statements. Edwards Removal Decl. ¶ 11; Edwards Opp'n Decl. ¶¶ 11-12. Mr. Edwards calculated these figures based on his search and review of TempWizard, the software A+ Student uses to manage employee time and attendance records and to administer its invoicing and payroll. Edwards Opp'n Decl. ¶¶ 3-4; *see id.* ¶¶ 5-12.

1. Sections 226 and 226.3

Plaintiffs' first cause of action alleges violations of California Labor Code section 226(a). Compl. ¶¶ 19-28. For these violations, Plaintiffs seek "damages and penalties set forth in California Labor Code sections 226(e)(1) and 226.3." *Id.* ¶ 27.

   a.   *Section 226(e)(1)*

Section 226(e) provides the remedy for a failure to comply with section 226(a) and entitles an employee "to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars[.]"[2]  Cal.

---

[2] Although section 226(e)(1) is phrased in the disjunctive, Plaintiffs seek "to recover the damages *and* penalties set forth in California Labor Code sections 226(e)(1) and 226.3." Compl. ¶ 27 (emphasis added); *id.*, Prayer for Relief ¶ 2 (requesting "[c]ompensatory and statutory damages, penalties and restitution, as appropriate and available under each cause of action . . . ."). Based on the wording of the Complaint, it is unclear whether Plaintiffs intend to seek actual damages or a statutory penalty. The parties focus only on the size of the statutory penalty. Neither party estimates actual damages, which triggers a three-year statute of limitations. *See Van v. Language Line Servs., Inc.*, 2016 WL 3143951, at *18 (N.D. Cal. June 6, 2016) (Under section 226(e)(1), "[w]hen a plaintiff is seeking actual damages, the three year statute of limitations applies, but

9

Lab. Code § 226(e)(1).

A+ Student calculates the amount in controversy under section 226(e)(1) as follows:

$$(\$100 \times 1{,}710 \text{ workweeks}) - (\$50 \times 330 \text{ employees}) = \$154{,}500^3$$

Not. of Removal ¶ 27; Opp'n at 9; Jt. Chart at 2. A+ Student's calculation is based on three assumptions: (1) there were weekly violations for all class members; (2) a one-year statute of limitations applies; and (3) there were 330 employees who worked during this time period and "1710 workweeks who were paid on a weekly basis." Jt. Chart at 2; *see* Edwards Opp'n Decl. ¶¶ 11-12.

Plaintiffs do not dispute the application of a one-year statute of limitations. *See id.* However, they argue A+ Student does not provide evidence to support its assumption that violations took place every workweek during the one-year period. Jt. Chart at 2. Plaintiffs also contest A+ Student's assumption that 330 employees worked for all of the 1,170 applicable workweeks. *Id.*; Mot. at 15. Finally, Plaintiffs argue A+ Student incorrectly applies the higher, subsequent rate penalty. Jt. Chart at 2. Plaintiffs thus assert the amount in controversy for Defendants' section 226 violation is properly calculated as: 1,710 pay periods x $50 = $85,000.[4] *Id.* at 3; Mot. at 18.

i. Initial versus Subsequent Penalty

A+ Student's formula applies the $100 subsequent penalty rate to every wage statement issued during this one-year period, save for the first, to which A+ Student applies the $50 initial

---

when a plaintiff is seeking statutory penalties, the one-year statute of limitations applies.").

[3] The parties do not address section 226(e)(1)'s limitation that the penalty shall "not . . . exceed an aggregate penalty of four thousand dollars ($4,000)."

[4] Plaintiffs also argue the "proper calculation is: 3,687 pay periods x $50 = $184,350; not $361,050, as Defendant A+ asserts." Mot. at 16. This appears to be an error, though neither Plaintiffs' Reply nor Supplemental Brief confirms this. *See also* Opp'n at 9 n.2 ("Defendant has never alleged that there were 3,689 pay periods, or that the amount in controversy on the Labor Code section 226 claim is $361,050."); Suppl. Br. Order at 1 n.2 ("Plaintiffs should also explain the basis for their contention that the "proper calculation [for their Labor Code section 226 claim] is: 3,687 pay periods x $50 = $184,350; not $361,050, as Defendant A+ asserts.").

penalty. A+ Student does not offer evidence to support this.

In *Amaral v. Cintas Corp. No. 2*, the California Court of Appeal considered what constituted an "initial" versus "subsequent" violation under California Labor Code sections 210 and 225.5.[5] 163 Cal. App. 4th 1157, 1208-09 (2008). Noting "[t]he statutes state that a penalty for an initial violation is to be imposed 'for each failure to pay each employee[,]'" the *Amaral* Court concluded

> [t]his language conveys two things. First, by specifying a $50 penalty must be imposed "for *each* failure to pay each employee" (italics added), the language contemplates that an "initial violation" can result in more than one penalty at the $50 level. In other words, multiple $50 penalties can result from a single initial violation. The only way this could conceivably occur is if penalties are assessed at each pay period. [ ] Second, because the statutory language contemplates the imposition of repeated penalties for each pay period that an initial violation continues, a "subsequent" violation (which carries a double penalty) must refer to something other than an underpayment that occurs after the first pay period. Although common sense might suggest a "subsequent" violation is nothing more than a violation that occurs at a later point in time after an "initial" violation, this definition is inadequate because the statutes provide for multiple penalties for "each failure to pay each employee" incurred in an initial violation.

*Id.* at 1209. The California Court of Appeal ultimately held that what constituted a subsequent as opposed to initial violation depended on whether the employer was on notice of the violation:

> Until the employer has been notified that it is violating a Labor Code provision (whether or not the Commissioner or court chooses to impose penalties), the employer cannot be presumed to be aware that its continuing underpayment of employees is a "violation" subject to penalties. However, after the employer has learned its conduct violates the Labor Code, the employer is on notice that any future violations will be punished just the same as violations that are willful or intentional—i.e., they will be punished at twice the rate of penalties that could have been imposed or that were imposed for the

---

[5] At the time *Amaral* was decided, these statutes provided for the following penalties:
> (a) For any initial violation, fifty dollars ($50) for each failure to pay each employee.
> (b) For each subsequent violation, or any willful or intentional violation, one hundred dollars ($100) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld.

Cal. Lab. Code § 210 (2003); Cal. Lab. Code § 225.5 (2003). Sections 210 and 225.5 have since been amended to increase the penalties for an initial violation to $100 dollars and a subsequent violation to $200, plus 25% of the amount unlawfully withheld.

11

initial violation.

*Id.*

"[F]ederal courts in this Circuit frequently rely on [*Amaral*'s] holding to interpret other sections of the Labor Code." *Robinson v. Open Top Sightseeing S.F., LLC*, 2018 WL 895572, at *19 (N.D. Cal. Feb. 14, 2018) (applying *Amaral* to Labor Code sections 226 and 2699 and collecting cases).

Plaintiffs allege that "[o]n October 18, 2017, Plaintiffs gave written notice by certified mail to the California Labor and Workforce Development Agency and ETC Institute of Labor Code violations as prescribed by California Labor Code section 2699.3." Compl. ¶ 17. Mr. Edwards declares A+ Student received written notice of the alleged violation on October 23, 2017. A+ Suppl. Br. at 3; Suppl. Edwards Decl. ¶ 2, Dkt. No. 29-1.[6] As such, only those wage statements issued after October 23, 2017 would be subject to the $100 subsequent penalty rate; any noncompliant wage statements issued between December 22, 2016 and October 23, 2017 would only be subject to the $50 initial penalty rate.

But A+ Student does not offer any evidence as to how many wage statements were issued before versus after it received notice of the alleged violation. In other words, A+ Student fails to support its assumption that it issued 330 noncompliant wage statements in the ten-month period December 22, 2016 and October 23, 2017 but issued 1,380 wage statements – 1,710 statements less 330 statements – in the approximately two-month period between October 23, 2017 and December 22, 2017. The Court cannot find this assumption is supported by sufficient evidence.

ii. 100% Violation Rate

Plaintiffs contend A+ Student erroneously assumes violations for every workweek and does not provide evidence in support of this assumption. Mot. at 15; Jt. Chart at 2.

"In the Northern District, courts disavow the use of a 100% violation rate when calculating the amount in controversy absent evidentiary support." *Moreno v. Ignite Rest. Grp.*, 2014 WL

---

[6] Mr. Edwards declares a copy of the letter giving notice of the alleged violations is attached as Exhibit A. Suppl. Edwards Decl. ¶ 1. The letter is not attached to the Supplemental Edwards Declaration.

1154063, at *5 (N.D. Cal. Mar. 20, 2014) (collecting cases). Plaintiffs allege that "[d]uring all relevant periods, Defendants failed to provide accurate itemized wage statements to Plaintiffs and members of the proposed class." Compl. ¶ 20 (emphasis added); *see id.* ¶¶ 22-26. "During all relevant time periods" establishes a timeframe in which the alleged violations took place, but it does not address how often those violations occurred. *See Branch v. PM Realty Grp., L.P.*, 647 F. App'x 743, 746 n.7 (9th Cir. 2016) ("We reject PMRG's assertion that Branch's use of the term 'at all relevant times' in the complaint allows it to assume a 100% violation rate. The term 'at all relevant times' in Branch's complaint does not refer to a violation rate."). A+ Student does not offer other evidence in support of its assumption that violations occurred in every instance.

b. *Section 226.3*

A section 226(a) violation also subjects an employer "to a civil penalty in the amount of two hundred fifty dollars ($250) per employee per violation in an initial citation and one thousand dollars ($1,000) per employee for each violation in a subsequent citation[.]" Cal. Lab. Code § 226.3.

A+ Student calculates the amount in controversy under Labor Code section 226.3 as follows:

$$\$250 \times 1{,}710 \text{ workweeks} = \$427{,}500^7$$

Jt. Chart at 3. This "assume[s] only [a] $250 penalty per employee per weekly pay period" and does not take into account the $1,000 penalty for each subsequent violation. *Id.* at 3-4.

For the reasons stated above, the Court cannot find A+ Student's assumption of a 100% violation rate is supported by a preponderance of the evidence. The Court accordingly deducts $427,500 from the amount in controversy.

c. *Summary*

The Court cannot find A+ Student's calculations of the amounts in controversy under

---

[7] This calculation revises A+ Student's initial calculation upon A+ Student's "recogni[tion] that the number should be reduced to **1,710 workweeks** for a one-year liability period." Jt. Chart at 3 (emphasis in original); *see also* Not. of Removal ¶ 27; Opp'n at 9 (calculating amount in controversy as $250 x 4,170 workweeks = $1,042,500 based on four-year statute of limitations).

13

sections 226(e) or 226.3 are supported by evidence.

2. Waiting Time Penalties

Plaintiffs' UCL and PAGA claims are based in part on violations of Labor Code section 203.[8] Compl. ¶¶ 64, 69. Upon an employee's discharge, "the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Lab. Code § 201. If an employer willfully fails to immediately pay such wages, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate" with a maximum penalty up to 30 days of wages. Cal. Lab. Code § 203(a).

A+ Student calculates the amount in controversy under Labor Code section 203 to be:

$14.75 per hour x 8 hours per day x 30 days x 678 employees = $2,400,120

Opp'n at 12; Jt. Chart at 14-15. The $14.75 hourly rate represents "an average of the hourly rate for the 694 employees at issue during these four years" and was calculated "by adding the last recorded hourly rate for each of the employees and then dividing it by 694." Edwards Opp'n Decl. ¶ 8. This also assumes that approximately 678 putative class members have separated from A+ Student for 30 or more days.[9] *Id.*

As a threshold matter, "section 203(b) contains a single, three-year limitations period governing all actions for section 203 penalties irrespective of whether an employee's claim for penalties is accompanied by a claim for unpaid final wages." *Pineda*, 50 Cal. 4th at 1398. A+ Student determined the number of employees who left its employ within a four-year period; it offers no evidence as to how many of putative class members separated from its employ in the last three years. For this reason, the Court finds A+ Student's calculation is flawed. Moreover, nothing in the present record allows the Court to refine A+ Student's calculation; there is no

---

[8] Neither party addresses the California Supreme Court's holding that "section 203 penalties cannot be recovered as restitution under the UCL." *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1402 (2010). For purposes of this Motion, the Court assumes, without deciding, that section 203 penalties are available under PAGA.

[9] The Notice of Removal indicates there are 624 terminated employees. Not. of Removal ¶ 27. A+ Student's Opposition updates this figure to 678 terminated employees. Opp'n at 12; *see also Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.1 (9th Cir. 2002) ("The district court did not err in construing Petsmart's opposition as an amendment to its notice of removal.").

14

evidence showing how many employees were terminated in the last three years.

      3.     Labor Code section 1174.5

Labor Code section 1174 requires employers to maintain records of "the names and addresses of all employees" and, among other things, "payroll records showing the hours worked daily by and the wages paid to" them. Cal. Lab. § 1174(c), (d). An employer who "willfully fails to maintain" these records "shall be subject to a civil penalty of five hundred dollars ($500)." Cal. Lab. Code § 1174.5.

Plaintiffs allege Defendants failed to "maintain and provide accurate wage statements to employees as required by California Labor Code section[] . . . 1174." Compl. ¶ 1. Plaintiffs seek to recover penalties for this violation under PAGA. *Id.* ¶ 69.

A+ Student calculates the amount in controversy under section 1174.5 as:

$$\$500 \times 694 \text{ employees} = \$347,000$$

Jt. Chart at 4. This assumes the entire class possesses claims. *Id.*

This assumption is unsupported. Plaintiffs' allegation that Defendants did not "maintain and provide accurate wage statements to employees" does not indicate how often this occurred, or how many employees were affected by this conduct. A+ Student does not otherwise offer evidence to support its use of a 100% violation rate.[10]

      4.     Failure to Pay Overtime

An employee who works "in excess of eight hours in one workday" or "in excess of 40 hours in any one workweek" is entitled to compensation "at the rate of no less than one and one-half times the regular rate of pay for an employee." Cal. Lab. Code § 510(a). An employer who violates section 510 is subject to the civil penalties set forth in Labor Code section 558. In addition, "any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance

---

[10] Plaintiffs argue "[s]ection 1174.5 does not provide for a $500 penalty *per employee* or even *per occurrence of violation*." Jt. Chart at 4 (emphasis in original). Plaintiffs do not cite any authority for this proposition. The Court need not resolve the issue, as A+ Student does not adequately support its assumption that a 100% violation rate applies.

15

of the full amount of this minimum wage or overtime compensation, including interest thereon[.]" Cal. Lab. Code § 1194.

Plaintiffs allege "Defendants required Plaintiffs and the members of the class to work in excess of 8 hours per day and 40 hours per week." Compl. ¶ 35. They further allege Defendants promised, but did not pay, bonuses to Plaintiffs and putative class members even though they had met the requirements for such bonuses. *Id.* ¶ 37.

A+ Student calculates the amount in controversy under Labor Code sections 510, 558, and 1194 as:

$14.75 per hour x 1.5 x 1.5 weeks x 4,170 workweeks = $138,391.88

Jt. Chart at 8-9. This calculation uses an average hourly rate of pay and assumes at least 1.5 hours of overtime for each workweek, or 18 minutes per day. *Id.*

### a. Average Hourly Rate of Pay

Plaintiffs dispute A+ Student's method of calculating the average hourly rate of pay. Reply at 15. They argue that "[b]y selecting the 'last recorded hourly rate' for each employee, Defendant is effectively selecting the highest possible rate of pay each individual has ever earned at Defendant, due to the gradual increase in federal and State rates of minimum wage over the years, and the natural increases in rates of pay employees typically earn over their tenure of work for one company." *Id.*

Mr. Edwards declares that his search and review of TempWizard showed that from December 12, 2013 to December 22, 2017, data collectors and surveyors were paid between $9.00 per hour and $25.00 per hour. Edwards Opp'n Decl. ¶ 8; Suppl. Edwards Decl. ¶ 3. Mr. Edwards determined the average hourly rate for the 694 employees was $14.75 by adding the last recorded hourly rate for each of the employees and then dividing it by 694. *Id.* (both). Mr. Edwards explains that "[s]ince the data collectors and surveyors in the putative class worked on a per-project basis—with each project lasting between one to ten months—their individual hourly rates did not significantly change or fluctuate." Suppl. Edwards Decl. ¶ 4. He declares that only 42 individuals – 6% of the putative class – received a pay raise. *Id.* ¶ 5. Using their initial pay rate, Mr. Edwards calculates the average rate of pay for these 42 individuals to be $14.73 – two cents

16

less than the average rate of pay for surveyors who did not receive pay increases. *Id.* ¶ 6.

Given the small percentage of surveyors who received increases in pay and the small difference between using the initial, rather than final, rate of pay, the Court cannot find A+ Student's use of the final rate of pay to be unreasonable. Moreover, Plaintiffs do not offer evidence to the contrary. Plaintiffs submit copies of the San Francisco Minimum Wage Ordinance and an article from the U.S. Department of Labor ("DOL") titled "History of Changes to the Minimum Wage Law." Davey Reply Decl., Exs. A & B, Dkt. No. 21-1. These exhibits do not support their arguments. Plaintiffs propose to represent a class of "individuals who worked for Defendants as surveyors or data collectors in the *State of California* within for years of the date of filing this complaint." Compl. ¶ 13 (emphasis added). The Complaint does not allege Plaintiffs worked in San Francisco, nor do Plaintiffs offer declarations to that effect. *See id.* ¶ 5 (alleging "Plaintiffs Bruce Williams and Tonya Hennessey . . . worked for Defendants in California" but not specifically in San Francisco). Assuming, arguendo, some surveyors worked in San Francisco, nothing in the record indicates how many surveyors worked there versus elsewhere in the State of California, which has a lower minimum wage than San Francisco.[11] By relying on San Francisco's minimum wage, Plaintiffs do the same thing they argue A+ Student has done by taking the last recorded hourly rate: Plaintiffs have effectively selected a higher possible rate of pay, which could increase the amount in controversy.

To the extent Plaintiffs submit the San Francisco Wage Ordinance and the DOL article for the proposition that minimum wage has increased over the years, the Court cannot find this discredits A+ Student's method of calculating surveyors' average hourly wage. Nothing in the record indicates Plaintiffs and other surveyors were paid minimum wage; conceivably, surveyors could have been paid at a higher rate. Plaintiffs do not attest to their hourly rate(s) of pay they earned while employed by Defendants, and they do not offer facts suggesting their own pay increased the longer they worked for Defendants. Thus, while Plaintiffs' evidence shows an increase in the federal and San Francisco minimum wages over the years, the current record does

---

[11] *See* State of California Department of Industrial Relations, *History of California Minimum Wage*, https://www.dir.ca.gov/iwc/minimumwagehistory.htm (last visited June 25, 2018).

17

not explain how this trend relates to Defendants' practices.

### b. Overtime Hours

Plaintiffs argue A+ Student's assumption that employees worked 1.5 overtimes hours per week is arbitrary. The Court agrees. A+ Student does not provide sufficient evidence to support this assumption. There is no evidence that every putative class member worked overtime, let alone did so every week. Nor is there evidence that putative class members worked the same number of overtime hours per week. Even if 1.5 hours is a conservative estimate (Jt. Chart at 9), this is not the standard. A+ Student must still offer evidence to support this assumption. It has not done so.

### c. Summary

For these reasons, the Court cannot find A+ Student shown, by a preponderance of the evidence, that the amount in controversy for Plaintiffs' overtime claim is $138,391.88.

### 4. Pre-Attorneys' Fees Amount in Controversy

A+ Student's contends the amount in controversy amounts to $7,215,276.63. Jt. Chart at 18. As discussed above, A+ Student fails provide evidence to support $3,467,511.88 of that figure. Even if the remainder of A+ Student's amount in controversy calculations were supported by a preponderance of the evidence, the amount in controversy is at most $3,747,764.75:

| Category | A+ Student's Estimate |
|---|---|
| Section 226(e)(1) Penalties | $154,500 |
| Section 226.3 Penalties | $427,500 |
| Section 203 Penalties | $2,400,120.00 |
| Section 1174.5 Penalties | $347,000 |
| Overtime Violations (§§ 510, 558, 1194) | 138,391.88 |
| **TOTAL** | $3,467,511.88 |
| | |
| $7,215,276.63 - $3,467,511.88 = $3,747,764.75 ||

1  Thus, exclusive of attorneys' fees, the amount in controversy calculation is less than $5 million.[12]

        5.        Future Attorneys' Fees

"It remains an open question whether attorney's fees that are anticipated but unaccrued at the time of removal or filing in federal court, such as those at issue in this case, may be included in the amount-in-controversy. Other circuits and the district courts in this circuit are divided on the issue." *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 649 n.2 (9th Cir. 2016).

Plaintiffs seek "attorneys' fees pursuant to Labor Code sections 226, 1194, 2802, and 2699[.]" Compl., Prayer for Relief ¶ 3. "[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998); *see Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (considering attorneys' fees in calculating amount in controversy in class action litigation). Some attorneys' fees may therefore be included in the amount in controversy calculation. Courts that "have considered future attorney's fees in determining the amount in controversy . . . have required defendants to provide a reasonably specific showing as to why a certain fee award is appropriate." *Gaasterland v. Ameriprise Fin. Servs., Inc.*, 2016 WL 4917018, at *10 (N.D. Cal. Sept. 15, 2016).

Even if the Court were to consider potential attorneys' fees, such fees do not bring the amount in controversy to $5 million. A+ Student relies on the 25% benchmark the Ninth Circuit has found to be reasonable in class action settlements.[13] Not. of Removal ¶ 29; *see In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award . . . ."). As discussed above, A+ Student has not met its burden of showing the amount in controversy is at least $4 million. Assuming, arguendo, using a 25% benchmark is proper to estimate attorneys' fees at this

---

[12] Because the remainder of A+ Student's calculations cannot amount to $5 million, the Court need not consider them.

[13] Some courts in this district have rejected the use of the 25% benchmark to determine whether the amount in controversy requirement is met. *See Vasquez v. Randstad US, L.P.*, 2018 WL 327451, at *6 (N.D. Cal. Jan. 9, 2018); *Zhao v. RelayRides, Inc.*, 2017 WL 6336082, at *17 (N.D. Cal. Dec. 12, 2017).

juncture, the addition of attorneys' fees does not meet CAFA's jurisdictional requirements.

## CONCLUSION

For the foregoing reasons, the Court finds A+ Student fails to show the amount in controversy exceeds $5 million and therefore fails to establish jurisdiction under CAFA exists. The Court therefore GRANTS Plaintiffs' Motion to Remand.

**IT IS SO ORDERED.**

Dated: June 25, 2018

_____
MARIA-ELENA JAMES
United States Magistrate Judge